## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BHUSHAN ATHALE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SINOTECH ENERGY LIMITED; GUOQIANG XIN; BOXUN ZHANG; QINGZENG LIU; XIAOXUAN BI; HEQING YAO; JING LIU; UBS AG; CITIGROUP GLOBAL MARKETS, INC.; and LAZARD CAPITAL MARKETS LLC<br><br>Defendants. | Civil Action No. 1:11-cv-05831-GBD |
| JACK CRAYDER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SINOTECH ENERGY LIMITED; GUOQIANG XIN; BOXUN ZHANG; QINGZENG LIU; XIAOXUAN BI; HEQING YAO; JING LIU; DONALD J. PUGLISI; UBS AG; UBS SECURITIES LLC; CITIGROUP GLOBAL MARKETS INC.; LAZARD CAPITAL MARKETS LLC; and GRANT THORNTON (n/k/a JBPB & CO.)<br><br>Defendants. | Civil Action No. 1:11-cv-05935-GBD |

(caption continued on subsequent page)

## MEMORANDUM OF LAW IN SUPPORT OF MOATAZ MOHAMED KHODIR'S MOTION FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

| | |
|---|---|
| JOHN YOUNG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SINOTECH ENERGY LIMITED; GUOQIANG XIN; BOXUN ZHANG; QINGZENG LIU; XIAOXUAN BI; HEQING YAO; JING LIU; UBS AG; UBS SECURITIES LLC; CITIGROUP GLOBAL MARKETS INC.; LAZARD CAPITAL MARKETS LLC; and GRANT THORNTON HK (n/k/a JBPB & CO.)<br><br>Defendants. | Civil Action No. 1:11-cv-06179-GBD |
| ROGER GUSTAFSON and GERMMAINE HEIN-GUSTAFSON, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SINOTECH ENERGY LIMITED; GUOQIANG XIN; BOXUN ZHANG; QINGZENG LIU; XIAOXUAN BI; HEQING YAO; JING LIU; UBS AG; UBS SECURITIES LLC; CITIGROUP GLOBAL MARKETS INC.; LAZARD CAPITAL MARKETS LLC; and GRANT THORNTON (n/k/a JBPB & CO.)<br><br>Defendants. | Civil Action No. 1:11-cv-06905-UA |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 3

ARGUMENT ............................................................................................................................. 7

    I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ............ 7

    II.    Khodir SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ......... 8

        A.    The PSLRA's Provisions Concerning The Appointment Of A Lead
              Plaintiff ........................................................................................................ 8

        B.    Under The PSLRA, Khodir Should Be Appointed Lead Plaintiff .............. 9

             1.    Khodir Filed a Timely Motion ........................................................ 9

             2.    Khodir Has the Largest Financial Interest in the Relief
                  Sought By the Class ...................................................................... 10

             3.    Khodir Meets Rule 23's Typicality and Adequacy
                  Requirements .............................................................................. 11

    III.    THE COURT SHOULD APPROVE khodir'S SELECTION OF THE
          FARUQI FIRM AS LEAD COUNSEL ................................................................. 13

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Barnet v. Elan Corp.*,
   236 F.R.D. 158 (S.D.N.Y. 2005) ...........................................................................12

*Bassin v. Decode Genetics, Inc.*,
   230 F.R.D. 313 (S.D.N.Y. 2005) .............................................................................8

*Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................7, 11, 13

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)..........................11

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ......................................................................8, 9, 10

*In re General Elec. Sec. Litig.*,
   No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ......... *passim*

*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996) ...........................................................................10

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990), *cert denied*, 498 U.S. 920 (1990)............................7

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11 Civ. 0917 (BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939
   (S.D.N.Y. May 19, 2011)........................................................................................13

*Lax v. First Merchants Acceptance Corp.*,
   No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ...............10

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993)......................................................................................7

*In re Nice Sys., Ltd. Sec. Litig.*,
   188 F.R.D. 206 (D.N.J. 1999)..................................................................................10

*Olsen v. New York Cmty. Bancorp.*,
   233 F.R.D. 101 (E.D.N.Y. 2005) ..............................................................................2

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) .................11

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*,
   No. 11 Civ. 733 (WHP), 2011 U.S. Dist. LEXIS 69022 (S.D.N.Y. June 20, 2011) ..............12

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) ........................................................................11

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ......................................................................7, 9

**STATUTES**

15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I) ....................................................................8

15 U.S.C. § 78u-4(a)(3)(A)(i) ..............................................................................9, 10

15 U.S.C. § 78u-4(a)(3)(B)(i) ....................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...............................................................................2, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ..................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ..............................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ......................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .............................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(v) ...............................................................................3, 13

Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 78u-4(a)(3)(B) ............................................................................1, 11

Section 21D(a)(2) ......................................................................................................10

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 .............................2

Securities Act of 1933 .............................................................................................2, 7

**OTHER AUTHORITIES**

Fed.R.Civ.P. Rule 10b-5 .............................................................................................2

Fed.R.Civ.P. Rule 23 .........................................................................................3, 9, 11

Fed.R.Civ.P. Rule 23(a) .....................................................................................3, 9, 11

Fed.R.Civ.P. Rule 23(a)(4) .......................................................................................12

Fed.R.Civ.P. Rule 42(a) ..........................................................................................2, 7

Movant Moataz Mohamed Khodir ("Khodir"), on behalf of himself and the Class defined herein, respectfully submits this memorandum of law pursuant to Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of his motion for the entry of an order:  (1) consolidating the Actions (defined below) and any related actions that may be filed; (2) appointing Khodir as Lead Plaintiff for the Actions; and (3) approving Khodir's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.

## PRELIMINARY STATEMENT

Presently pending in this District are four securities class actions (the "Actions")[1] brought on behalf of a putative class (the "Class") of investors who suffered damages as a result of their

---

[1]     The Actions are set forth in the table below:

| Case Name | Civil Action No. | Class Period | Claims Asserted |
|---|---|---|---|
| Athale v. SinoTech Energy Limited, et al. | No. 1:11-cv-05831-GBD | November 3, 2010 through and including August 16, 2011 | §§ 11 & 15 |
| Crayder v. SinoTech Energy Limited, et al. | No. 1:11-cv-05935-GBD | November 3, 2010 through and including August 16, 2011 | §§ 11, 12(a)(2) & 15; §§10(b) & 20(a) |
| Young v. SinoTech Energy Limited, et al. | No. 1:11-cv-06179-GBD | November 3, 2010 through and including August 16, 2011 | §§ 11, 12(a)(2) & 15; §§ 10(b) & 20(a) |
| Gustafson et al v. SinoTech Energy Limited, et al. | No. 1:11-cv-06905-UA | November 3, 2010 through and including August 16, 2011 | §§ 11, 12(a)(2) & 15; §§ 10(b) & 20(a) |

transactions in SinoTech Energy Limited ("SinoTech" or the "Company") securities during the period from November 3, 2010 through and including August 16, 2011 (the "Class Period").  In connection therewith, various movants seek:  (1) to consolidate all related actions; (2) to be appointed lead plaintiff; and (3) to approve their selection for lead counsel.

As an initial matter, the Court must decide whether to consolidate the Actions.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  On this threshold question, little doubt exists.  The Actions assert claims for violations of (i) Sections 11, 12(a)(2), and 15 of the Securities Act and (ii) Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.  The Actions also allege substantially the same misconduct by SinoTech, the Company's officers and directors, and underwriters participating in SinoTech's initial public offering ("IPO").[2]  Because the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated under Federal Rule of Civil Procedure 42(a).

With respect to the appointment of a lead plaintiff to oversee the consolidation Actions, Congress established a presumption in the PSLRA that requires the Court to appoint as lead plaintiff the "person or group of persons" who demonstrate the "largest financial interest in the

---

Minor differences exist between the Actions.  First, while the *Crayder* action asserts claims under the Securities Act of 1933 (the "Securities Act") against Donald J. Puglisi as a member of the Board of Directors, he is not named as a defendant in any other action.  Second, all actions assert Securities Act claims against UBS, LLC and Grant Thornton (n/k/a JBPB & CO.), with the exception of the *Athale* action.

[2]      Although the *Athale* action only asserts claims for violations of Section 11 and 15 of the Securities Act, differences in causes of action does not render consolidation inappropriate under Federal Rule of Civil Procedure 42(a).  *See Olsen v. New York Cmty. Bancorp.*, 233 F.R.D. 101, 104-105 (E.D.N.Y. 2005) (consolidating several actions despite some plaintiffs only asserting claims under Securities Act and other asserting claims only under the Exchange Act).

litigation" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

With total losses of $6,860.00,[3] Khodir, to the best of counsels' knowledge, has the largest financial interest in the litigation of any movant.   Khodir also satisfies Rule 23's typicality and adequacy requirements.  Khodir's claims are typical of the Class's claims because he suffered losses in his SinoTech investments as a result of the defendants' false and misleading statements.   Further, Khodir has no conflict with the Class and will adequately protect the Class's interests given Khodir's significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel.  Accordingly, Khodir is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Khodir is entitled to select, subject to the Court's approval, lead counsel to represent the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Khodir has engaged the Faruqi Firm for this purpose.  The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Khodir's motion should be granted in its entirety.

## FACTUAL BACKGROUND

SinoTech is a non-state owned Cayman Islands corporation headquartered in Beijing, People's Republic of China.  The Company provides Enhanced Oil Recovery ("EOR") services to major oil and gas fields in China.  During the Class Period, defendants issued materially false

---

[3]         For purposes of this analysis, counsel for Khodir has assigned a $0.00 value to Khodir's shares as of the August 16, 2011 because trading in SinoTech's shares has been halted, and the common stock is not actively traded on any domestic exchange.

and misleading statements regarding the Company's financials that exaggerated the nature, size, and scope of the Company's business.

Specifically, the Class Period begins on November 3, 2010 when the Company's amended registration and prospectus statement became effective.[4]   SinoTech then sold approximately 19 million American Depository Shares ("ADS") in an IPO at $8.50 per share. Gross proceeds to the Company from the IPO were approximately $124.8 million.

Subsequently, on March 10, 2011, the Company issued a press release announcing its first quarter 2011 financial results and disclosed sales of $22.8 million, an increase of 207.5% from the first quarter 2010, gross profit of $16.3 million, an increase of 191% from first quarter 2010, and net income of $11.4 million, an increase of 165.8% from 1Q 2010.[5]   On March 31, 2011, SinoTech filed its Form 20-F for the first quarter 2011 and reiterated the results in its

---

[4]      The F-1/A statement included the following misrepresentations (summarized in the chart below):

| PERIOD | SALES | NET INCOME |
|---|---|---|
| May 6, 2009 through September 30, 2009 | $15.26 million | $5.22 million |
| October 1, 2009 through May 5, 2009 | $22.9 million | $9.3 million |
| Fiscal Year Ended September 30, 2008 | $31.3 million | $11.6 million |
| October 1, 2007 through October 12, 2007 | $802,998 | $89,645 |
| Fiscal Year Ended September 2007 | $24.9 million | $8.11 million |

[5]      Director Guoqiang Xin touted the Company's excellent financial results and also announced that "[w]ith China's oil and natural gas producers increasingly reliant on EOR services to maximize output from their wells, we also see very healthy growth in demand for our . . . services."   Director Boxun Zhang also announced that he was "pleased to report that [SinoTech] continue[s] to have very strong visibility for the coming quarter and the year ahead."

March 10, 2011 press release.  On May 6, 2011, the Company issued another press release and raised its financial outlook for its fiscal year 2011.

On May 19, 2011, the Company issued a press release announcing its second quarter 2011 financial results and disclosed sales of $25 million, an increase of 201.5% from its second quarter 2010, gross profit of $17.6 million, an increase of 188% from its second quarter 2010, and net income of $10.9 million, compared to a net loss of $2.6 million from second quarter 2010.[6]  The Company then issued a press release on June 23, 2011 announcing that SinoTech's Board of Directors authorized a $20 million share repurchase program and reiterating that "total sales in fiscal year 2011 will increase by more than 120% compared to fiscal year 2010."  On July 29, 2011, the Company issued another press release announcing acquisition of new equipment "in response to very strong demand from China's oil producers for SinoTech's proven and effective . . . services . . . ."

On August 4, 2011, the Company issued a press release announcing its third quarter 2011 financial results and disclosed sales of $29.8 million, an increase of 205.1% from its third quarter 2010, gross profit of $21.2 million, an increase of 187.3% from 3Q 2010, and net income of $13.2 million, compared to a net loss of $7.4 million in 3Q 2010.  The Company again increased its financial year 2011 guidance, from a range of $100 million to $105 million, to between $108 million to $112 million.

On August 16, 2011, a research analyst writing under the name Alfred Little published a report titled "SinoTech Energy: Enhanced Oil Recovery or Capital Extraction" detailing numerous improprieties about the Company.  More specifically, the report stated, in part, as follows:

---

[6]      Xin and Zhang also announced in the release SinoTech's financial strength, improved corporate governance, and continued growth potential.

A thorough investigation of [SinoTech] . . . concludes that [SinoTech], its largest customers and suppliers are likely nothing more than empty shells with little or no sales or income.  This report shows:

1. [SinoTech]'s sole import agent accounting for over $100 million worth of oil drilling equipment orders appears to be an empty shell with no sign of operation, a limited import history and negligible revenue base.

2. [SinoTech]'s sole chemical supplier appears to be an empty shell, with little or no revenues, a deserted office and no signs of production activity.

3. Likewise, [SinoTech]'s five largest subcontracting customers, providing the vast majority of [SinoTech]'s revenues, appear to be shell companies with unverifiable operations and minimal revenues themselves.

4. [SinoTech]'s oil drilling technology is questionable, mispriced and uncompetitive.

5. [SinoTech]'s audited financial statements filed with Chinese Government's State Administration of Industry and Commerce (SAIC) further confirm its negligible business operations.

6. [SinoTech]'s board of directors lacks independence and effective oversight of management, evidenced by undisclosed related party dealings.

* * *

Our much closer investigation . . . clearly uncovered a company with a significant mismatch between [its] SEC financial statements and the counterparts filed with [the] Chinese government, with a network of shell companies acting together as a one-stop-shop to provide all business transaction documents, contracts and invoices. . . .

On this news, the Company's ADS price plummeted more than 40% from $4.02 per share on August 15, 2011 to $2.35 per share at close on August 16, 2011 on unusually high trading volume.  On the same day, following the publication of the report, NASDAQ halted SinoTech's trading, announcing that trading would remain halted until the Company "fully satisfied NASDAQ's request for additional information."  To date, trading has not resumed.

The Actions are the only chance Class members will have to receive compensation for being defrauded by defendants' statements and omissions, and Khodir seeks to ensure that investors receive the maximum possible recovery.

**ARGUMENT**

## I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered."   15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding appointment of the lead plaintiff for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990), *cert denied*, 498 U.S. 920 (1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (consolidating securities class actions).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *In re General Elec. Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4-8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of facts *and* law.  The Actions assert claims under the Securities Act and the Exchange Act on behalf of investors who were defrauded by SinoTech, various Company's officers and directors, and SinoTech's IPO

underwriters.  The Actions allege substantially the same wrongdoing, namely that defendants issued materially false and misleading statements and omissions that artificially inflated SinoTech's stock price and damaged the Class when the truth emerged and SinoTech's stock price crashed.  Consolidation of the Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re General Elec.*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary cost to the parties.").

## II.     KHODIR SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.     The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I).  It provides that within 20 days of the filing of the action, plaintiffs are required to publish a notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff.  *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members."  Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

(aa)    has either filed the complaint or made a motion in response to a notice (published by a complainant);

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Foley*, 272 F.R.D. at 127 (describing the PSLRA's two-step competitive process for determining the "most adequate plaintiff"); *In re Tronox*, 262 F.R.D. at 343-44 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Foley*, 272 F.R.D. at 127; *In re Tronox*, 262 F.R.D. at 344.

## B.    Under The PSLRA, Khodir Should Be Appointed Lead Plaintiff

As discussed below, Khodir should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Khodir holds the largest financial interest of any movant, and Khodir otherwise satisfies Rule 23's typicality and adequacy requirements.

### 1.    Khodir Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Actions was required to publish notice of the complaint within twenty (20) days of its filing. Counsel for Bhushan Athale published notice of the lead plaintiff deadline via *Business Wire* on August 19, 2011.[7]  *See* Vozzolo Decl., Ex. A.[8]  Consequently, any member of the proposed Class

---

[7]    Publication by *Business Wire* is an adequate means for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire service."

in the Actions was required to seek to be appointed lead plaintiff within 60 days after publication of the notice (*i.e.*, on or before October 18, 2011).  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Thus, Khodir's motion was timely filed.  Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Khodir timely signed and submitted a certification with his motion, identifying all of his relevant SinoTech trades during the Class Period, and detailing Khodir's suitability to serve as lead plaintiff in this case.  *See*  Vozzolo Decl., Ex. B.  The PSLRA's procedural requirements have therefore been met.

### 2.    Khodir Has the Largest Financial Interest in the Relief Sought By the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to the methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit often look to four factors in the inquiry:  (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant.  *See Foley*, 272 F.R.D. at 127-28 (citations omitted);  *In re General Elec.,* 2009 U.S. Dist. LEXIS 69133, at *9.  Courts have placed the most emphasis on the last of the four factors:  the approximate loss suffered by the movant.  *Foley*, 272 F.R.D. at

---

*See In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

[8]    All references to Exhibits are references to the exhibits annexed to the Declaration of Antonio Vozzolo dated October 18, 2011, filed in support hereof.

128 (citations omitted); *In re General Elec.*, 2009 U.S. Dist. LEXIS 69133, at *11 (citation omitted).

Overall, Khodir purchased 2,800 shares of SinoTech common stock during the Class Period, and suffered losses of $6,860.00 when calculated using either a first in, first out ("FIFO") methodology or last in, first out ("LIFO") methodology.[9]  *See* Vozzolo Decl., Exs. C and D. Khodir is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.      Khodir Meets Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff satisfy Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B).  When assessing potential lead plaintiffs, only Rule 23(a)'s typicality and adequacy requirements are relevant.  *See, e.g.*, *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *see also Blackmoss*, 252 F.R.D. at 191 ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted).

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Blackmoss* 252 F.R.D. at 191 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).  However, the claims of the class representative need not be identical to those of all members of the class.  *Id.*; *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs

---

[9]      These calculations are solely for purposes of this motion and are not meant to represent the amount of, or method of calculation of, damages that plaintiffs may present at trial.

and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (internal quotations and citation omitted).

Khodir's claims are clearly typical of the Class's claims. Khodir purchased SinoTech's common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and possesses claims against SinoTech and its officers and/or directors under the federal securities laws. Because the factual and legal bases of Khodir's claims are similar, if not identical, to those of the Class's claims, Khodir necessarily satisfies the typicality requirement. *See Barnet v. Elan Corp.*, 236 F.R.D. 158, 163 (S.D.N.Y. 2005) (investor group typical where it asserted that it "purchased [company's] securities during the class period and was injured by false and misleading representations made by defendants in violation of the [Exchange] Act").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class." Adequate representation will be found if able and experienced counsel represents the representative, and the representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*, No. 11 Civ. 733 (WHP), 2011 U.S. Dist. LEXIS 69022, at *8 (S.D.N.Y. June 20, 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation.") (citation omitted); *In re General Elec.*, 2009 U.S. Dist. LEXIS 69133, at *15 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel.").

As evidenced by the representations in Khodir's certifications, his interests are perfectly aligned with -- and by no means antagonistic to -- the interests of the Class.  *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917 (BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939, at *4 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *Blackmoss*, 252 F.R.D. at 191 (same).  Moreover, Khodir has selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class.  As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation.  *See* Vozzolo Decl., Ex. E. Consequently, Khodir is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Khodir respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## III.   THE COURT SHOULD APPROVE KHODIR'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval.  Khodir has selected the Faruqi Firm to be Lead Counsel for the Class.  As reflected in the firm's resume, the Faruqi Firm possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions.  *See* Vozzolo Decl., Ex. E.  Accordingly, the Faruqi Firm is well qualified to represent the Class, and Khodir requests that the Court approve his selection of the Faruqi Firm as Lead Counsel for the putative class.  *See Kokkinis*, 2011 U.S. Dist. LEXIS 54939, at *4-5 (citations omitted).

**CONCLUSION**

For the foregoing reasons, Khodir respectfully requests that the Court: (1) consolidate the Actions and any related actions that may be filed; (2) appoint Khodir as Lead Plaintiff for the Action; (3) approve Khodir's selection of the Faruqi Firm as Lead Counsel for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: October 18, 2011

Respectfully submitted,

By: _/s/ Antonio Vozzolo_

**FARUQI & FARUQI, LLP**
Antonio Vozzolo
Richard W. Gonnello
Francis P. McConville
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: avozzolo@faruqilaw.com
             rgonnello@faruqilaw.com
             fmcconville@faruqilaw.com

*Attorneys for Plaintiff Moataz Mohamed Khodir*

14