**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BHUSAN ATHLAE, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil Action No. 1:11-cv-05831 (GBD) |
| v. | |
| SINOTECH ENERGY LIMITED et al, | |
| Defendants. | |
| JACK CRAYDER, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil Action No. 1:11-cv-05935 (GBD) |
| v. | |
| SINOTECH ENERGY LIMITED et al, | |
| Defendants. | |

*(Captions continued on following page)*

**MEMORANDUM OF LAW IN SUPPORT OF LEONARD
STEINBORN AND MICHAEL J. PILEWSKI'S MOTION FOR
CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS
<u>LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL</u>**

| | |
|---|---|
| JOHN YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SINOTECH ENERGY LIMITED et al,<br><br>Defendants. | Civil Action No. 1:11-cv-06179 (GBD) |
| ROGER GUSTAFSON and GERMMAINE HEIN GUSTAFSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SINOTECH ENERGY LIMITED et al,<br><br>Defendants. | Civil Action No. 1:11-cv-06905 (GBD) |

TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................................ 2

III.   ARGUMENT .................................................................................................................. 5

       A.    The Actions Should Be Consolidated ...................................................................5

       B.    The PSLRA's Lead Plaintiff Provisions ...............................................................5

       C.    Steinborn-Pilewski  are the "Most Adequate Plaintiff" ........................................7

             1.    Steinborn-Pilewski  have the Largest Financial Interest in the
                   Relief Sought by the Class ..........................................................................7

             2.    Steinborn-Pilewski  Satisfy Rule 23 ........................................................7

                   a.    Steinborn-Pilewski  Are Typical .....................................................8

                   b.    Steinborn-Pilewski Are Adequate ...................................................8

       D.    The Court Should Approve Steinborn-Pilewski's Selection of Co-Lead
             Counsel ..............................................................................................................10

IV.    CONCLUSION ............................................................................................................ 11

## TABLE OF AUTHORITIES

CASES                                                                                       PAGE(S)

*Faris v. Longtop Fin. Techs. Ltd.*,
    No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) .................................2, 5

*In re Espeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ...........................................................................................7, 8

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ....................................................................... *passim*

*Reimer v. Ambac Fin. Group, Inc.*,
    Nos. 08 Civ. 411(NRB), *et al.*, 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ..........................8

*Shi v. Sina Corp.*,
    No. 05 Civ. 2154(NRB), *et al.*, 2005 WL 1561438 (S.D.N.Y. July 1, 2005).....................7, 8

STATUTES

15 U.S.C. § 77z-1(a)(3)(B) ....................................................................................................1

15 U.S.C. § 78u-4(a) ............................................................................................................5

15 U.S.C. § 78u-4(a)(3)(A) ..................................................................................................6

15 U.S.C. § 78u-4(a)(3)(A)(i) ..............................................................................................5

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) .........................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(i) ...............................................................................................6

15 U.S.C. §78u-4(a)(3)(B)(ii) ..........................................................................................1, 4

15 U.S.C. §78u-4(a)(3)(B)(iii) ..............................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .........................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ...................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(v) ..............................................................................................9

RULES

Fed. R. Civ. P. 42(a) .........................................................................................................1, 5

Fed. R. Civ. P. 23 .....................................................................................................2, 6, 7, 8

ii

Leonard Steinborn and Michael J. Pilewski (collectively, "Steinborn-Pilewski"), respectfully submit this memorandum of law in support of their Motion for: (i) consolidation of related actions pursuant to Fed. R. Civ. P. 42(a); (ii) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4(a)(3)(B) and 77z-1(a)(3)(B); and (iii) approval of their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Grant & Eisenhofer P.A. ("Grant & Eisenhofer") as co-lead counsel.

## I.    PRELIMINARY STATEMENT

Presently pending in this district are at least four securities class action lawsuits (the "Actions") brought on behalf of purchasers of the American Depository Shares ("ADSs" or "shares") issued by defendant SinoTech Energy Limited ("SinoTech" or the "Company"), who purchased or otherwise acquired the Company's shares between November 3, 2010 and August 16, 2011, inclusive (the "Class Period").[1]  The Actions also include purchasers of SinoTech's shares that were issued pursuant or traceable to the Company's Initial Public Offering ("IPO" or the "Offering").  The Actions all allege violations under the Securities Act of 1933 (the "Securities Act") and under the Securities Exchange Act of 1934 (the "Exchange Act").[2]

Here, the Actions should be consolidated because they involve common issues of law and fact.  *See* Fed. R. Civ. P. 42(a) ("Rule 42(a)"); 15 U.S.C. §78u-4(a)(3)(B)(ii).  After the Court's ruling on consolidation, Steinborn-Pilewski respectfully submit that they should be selected as lead plaintiff because, to the best of their knowledge, they possess the largest financial interest in the

---

[1]    *See Athale v. Sinotech Energy Limited et al.*,  No. 11-cv-05831-GBD; *Crayder v. Sinotech Energy Limited et al.*, No. 11-cv-05935-GBD; *Young v. Sinotech Energy Limited et al.*, No. 11-cv-06179-GBD; *Gustafson v. Sinotech Energy Limited et al.*, No. 11-cv-06905-GBD.

[2]    For the purposes of this memorandum of law, the PSLRA provisions set forth in the Exchange Act are cited and citations to the Securities Act are omitted, as they are redundant.

relief sought by the class and also meet the applicable requirements of Rule 23 of the Federal Rules of Procedure ("Rule 23").  Accordingly, Steinborn-Pilewski believe that they are the presumptively most adequate plaintiff under the PSLRA and entitled to appointment as lead plaintiff for the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  Further, Steinborn-Pilewski respectfully request the Court approve their selection of Kessler Topaz and Grant and Eisenhofer as co-lead counsel for the class. *See* § III.D, *infra*; *Kaplan v. Gelfond*, 240 F.R.D. 88, 96 (S.D.N.Y. 2007) ("the PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval") (citing 15 U.S.C. § 78u-4(a)(3)(B)(v)); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *9 (S.D.N.Y. Oct. 4, 2011).

## II.    FACTUAL BACKGROUND

SinoTech describes itself as a provider of enhanced oil recovery ("EOR").  According to the Company, SinoTech provides innovative EOR services to major oil companies in China using leading edge technologies, including certain patented lateral hydraulic drilling ("LHD") technologies.  SinoTech also purports to provide technical services to coalbed methane customers using the LHD technology.  The Company's ADSs traded, until they were halted, on the NASDAQ under the ticker "CTE."

The Class Period commences on November 3, 2010 with SinoTech's IPO.  The IPO offered over 19.7 million ADSs resulting in proceeds of over $167.8 million to SinoTech.  The Offering was underwritten by defendants UBS AG, Citigroup Global Markets Inc. and Lazard Capital Markets LLC.  The documents filed in connection with the IPO made several positive statements about the Company's operations and also reported that "[i]n the nine fiscal months ended September 30, 2010, [SinoTech] . . .  had sales of $25.5 million. . . ."

Following the IPO, SinoTech issued several positive statements about its financial results and the Company's prospects.  For example, the Company reported total sales of $45.3 million for fiscal

year ("FY") 2010.  In connection with the announcement of SinoTech's FY2010 results (on December 2, 2010), defendant Guoqiang Xin, the Company's CEO, stated "We are pleased to report strong results for fiscal year 2010, driven by solid demand from China's oil producers for our EOR technologies and an increase in our equipment installations in China."  On March 10, 2011, the Company issued a press release announcing, *inter alia*, that "[t]otal sales in the first quarter of fiscal year 2011 were US$22.8 million, an increase of 207.5% from the corresponding period in fiscal year 2010."  Xin stated that the "robust results" reflected "strong and growing industry demand for [SinoTech's] high-efficiency cost-effective EOR solutions."  The Company's positive statements continued.

On May 19, 2011, the Company issued a press release entitled "SinoTech Announces Second Quarter of Fiscal Year 2011 Financial Results" which stated, in relevant part, that "[s]ales in the second quarter of fiscal year 2011 were US$25.0 million, an increase of 201.5% from the corresponding period in fiscal year 2010."  On August 4, 2011, the Company issued a press release entitled "SinoTech Announces Third Quarter of Fiscal Year 2011 Financial Results."  The August 4, 2011 press release reported that SinoTech's "[s]ales in the third quarter of fiscal year 2011 were US$29.8 million, an increase of 205.1% from the corresponding period in fiscal year 2010."

As investors later learned, each of the Company's Class Period statements about its financial results and prospects were materially false. Specifically, on August 16, 2011, a research report authored by Alfred Little exposed the Company as having few, if any, legitimate operation (the "Little Report").  The Little Report revealed, among other things, that:

1. SinoTech's sole import agent accounting for over $100 million worth of oil drilling equipment orders appears to be an empty shell with no sign of operation, a limited import history and negligible revenue base;

2. SinoTech's sole chemical supplier appears to be an empty shell, with little or no revenues, a deserted office and no signs of production activity;

3.  SinoTech's five largest subcontracting customers, providing the vast majority of the Company's revenues, appear to be shell companies with unverifiable operations and minimal revenues themselves;

4.  SinoTech's oil drilling technology is questionable, mispriced and uncompetitive;

5.  SinoTech's audited financial statements filed with Chinese Government's State Administration of Industry and Commerce (SAIC) confirm its negligible business operations;

6.  SinoTech's board of directors lacks independence and effective oversight of management, evidenced by undisclosed related party dealings; and

7.  SinoTech's stock is theoretically worth less than $0.63 per share but investors will likely recover nothing.

On this news, the Company's ADSs declined $1.67 per share, or 41%, to close on August 16, 2011 at $2.35 per share.   Also on August 16, 2011, the NASDAQ halted trading in the Company's ADSs, and stated that they would remain halted until the Company "fully satisfied NASDAQ's request for additional information."

SinoTech initially dismissed the Little Report.  On August 17, 2011, defendant Xin stated that the Company was "outraged by this blatantly self-interested, mercenary attempt to profiteer at the expense of SinoTech and its shareholders."  Notwithstanding Xin's "outrage[]," on September 23, 2011, Ernst & Young Hua Ming ("E&Y"), the Company's auditor, resigned from its engagement with SinoTech and withdrew its "clean audit" opinion issued for the Company's financial report for the fiscal year ended September 30, 2010.

The Company's ADSs remain halted.[3]

---

[3]      Given that trading has not resumed, Steinborn-Pilewski have valued retained shares purchased during the Class Period at $0 per share.

### III.    ARGUMENT

#### A.    The Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). There are at least four related securities class actions pending in this District on behalf of investors who purchased SinoTech securities during the Class Period:

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Athale v. Sinotech Energy Limited et al.,* | 11-cv-05831-GBD | 8/19/2011 |
| *Crayder v. Sinotech Energy Limited et al.,* | 11-cv-05935-GBD | 8/24/2011 |
| *Young v. Sinotech Energy Limited et al.,* | 11-cv-06179-GBD | 9/2/2011 |
| *Gustafson v. Sinotech Energy Limited et al.,* | 11-cv-06905-GBD | 9/30/2011 |

Under Rule 42(a), consolidation is appropriate where the actions involve common questions of law or fact. *See Kaplan*, 240 F.R.D. at 90-91; *Longtop*, 2011 WL 4597553, at *4. Here, the Actions present virtually identical factual and legal issues arising out of the same alleged course of misconduct and involve the purchase of SinoTech securities by investors at artificially inflated prices during the Class Period. Accordingly, consolidation is appropriate. *See Kaplan*, 240 F.R.D. at 91.

#### B.    The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedures for selecting a lead plaintiff in class action lawsuits alleging violations under the federal securities laws. *See* 15 U.S.C. § 78u-4(a); *Longtop*, 2011 WL 4597553, at *3 ("The PSLRA establishes procedures for selecting the lead plaintiff in class action lawsuits alleging violations of the federal securities laws").

First, the plaintiff who files the initial action must publish a notice within twenty days of filing, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Third, the PSLRA provides that within ninety days after publication of notice, courts shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa)    has either filed the complaint or made a motion in response to a notice…;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Kaplan*, 240 F.R.D. at 92.

Here, the *Athale* action, the first filed case, was filed on August 19, 2011, and notice of the *Athale* action was published on *Business Wire* that same day. *See* Declaration of Geoffrey C. Jarvis in Support of Leonard Steinborn and Michael J. Pilewski's Motion For Consolidation Of Related Actions, Appointment As Lead Plaintiff And Approval Of Co-Lead Counsel ("Jarvis Decl.") Ex. A. Thus, the time period in which class members may move to be appointed lead plaintiff in this case expires on October 18, 2011. *See* 15 U.S.C. § 78u-4(a)(3)(A). Pursuant to the PSLRA's provisions,

and within the requisite time frame after publication of the required notice, Steinborn-Pilewski timely move this Court to be appointed lead plaintiff on behalf of all members of the class.  *See Kaplan*, 240 F.R.D. at 92.  Steinborn-Pilewski believe that they possess the largest financial interest of any movant before the Court and otherwise meet the applicable requirements under Rule 23.  *See* Jarvis Decl., Exs. B-E. In addition, Steinborn-Pilewski have selected and retained counsel experienced in the prosecution of securities class actions to represent the class as co-lead counsel.  *See* Jarvis Decl., Exs. G-H.   Accordingly, Steinborn-Pilewski satisfy the PSLRA's filing requirements for seeking appointment as lead plaintiff.

### C.    Steinborn-Pilewski  are the "Most Adequate Plaintiff"

#### 1.    Steinborn-Pilewski have the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, Steinborn-Pilewski purchased 69,799 ADSs (resulting in 57,219 net purchases) and suffered losses of approximately $239,744 in connection with their transactions in SinoTech ADSs.[4]  *See* Jarvis Decl., Exs. B-E.  To the best of their knowledge, Steinborn-Pilewski possess the largest financial interest in the relief sought by the class.  *See Kaplan*, 240 F.R.D. at 93-94.

#### 2.    Steinborn-Pilewski Satisfy Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

---

[4]     Steinborn-Pilewski's loss is identical under either a first-in-first-out ("FIFO") or a last-in-first-out ("LIFO") analysis.

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Although Rule 23 consists of four requirements, at this stage of the litigation, a movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *see Shi v. Sina Corp.*, No. 05 Civ. 2154(NRB), *et al*., 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005) ("At this stage, only a preliminary showing of typicality and adequacy is required.").

### a.   Steinborn-Pilewski Are Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Espeed*, 232 F.R.D. at 102 (citation omitted).

Here, Steinborn-Pilewski are typical because, just like all other class members asserting claims under the Exchange Act and the Securities Act, they: (1) purchased or otherwise acquired SinoTech securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the defendants' conduct causing the price of SinoTech's securities to fall.  *See Reimer v. Ambac Fin. Group, Inc.*, Nos. 08 Civ. 411(NRB), *et al*., 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008).  Thus, Steinborn-Pilewski's claims are typical of other class members' claims because both sets of claims arise out of the same course of events and are based on identical theories of liability and damages.  *See id.*

### b.   Steinborn-Pilewski Are Adequate

The adequacy requirement of Rule 23(a)(4) is met if the representative party makes a showing that it will "fairly and adequately protect the interests of the class."  Specifically, the adequacy requirement is fulfilled when: "(1) class counsel is qualified, experienced, and generally

able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kaplan*, 240 F.R.D. at 94; *see also Shi,* 2005 WL 1561438, at *3.

Here, Steinborn-Pilewski meet the adequacy requirement.  Steinborn-Pilewski's interests and the class' interest are aligned as both suffered losses from the revelation of defendants' false and misleading statements and material omissions.  Moreover, and both Messrs. Steinborn and Pilewski have certified their willingness to serve as representatives of the class.  *See* Jarvis Decl., Exs. B, D.

Messrs. Steinborn and Pilewski have suffered significant losses from their investments in SinoTech and are, as a result, highly motivated to actively steer the prosecution of this action.  *Id*. at Ex. F, ¶¶ 4-5.  Indeed, Steinborn-Pilewski have already conferred with one another about the prosecution of this case (*see id.*, ¶8) and have implemented specific protocols to ensure that the class' claims are efficiently and effectively prosecuted.  For example, they have established protocols for:

- calling emergency meetings (*id.*, ¶ 7);
- dividing case related projects between counsel and implementing procedures for Messrs. Steinborn and Pilewski to approve major case related projects before they commence (*id.*, ¶¶ 8, 11);
- resolving disagreements in the unlikely event any arise (*id.*, ¶ 9); and
- implementing a schedule for receiving a minimum number of reports from counsel (*id.*, ¶ 12).

Steinborn-Pilewski have also acknowledged their roles as fiduciaries for the class, the need to communicate without counsel and their commitment to actively direct this litigation in order to maximize the recovery for the class.  *See id.*, ¶¶ 5-7.  Thus, there is no evidence of antagonism between Steinborn-Pilewski and the class.

Finally, as shown below, Steinborn-Pilewski's proposed co-lead counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Thus, Steinborn-Pilewski have made a *prima facie* showing of typicality and adequacy.

**D.    The Court Should Approve Steinborn-Pilewski's Selection of Co-Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Kaplan*, 240 F.R.D. at 96.  The Court should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Because Steinborn-Pilewski have selected and retained counsel experienced in litigating securities fraud class actions with the resources required to prosecute this action to the greatest recovery possible for the class, they respectfully ask the Court to approve their proposed co-lead counsel.

Here, Steinborn-Pilewski have selected Kessler Topaz and Grant and Eisenhofer as co-lead counsel for the class.  Kessler Topaz specializes in prosecuting complex class action litigation and is one of the preeminent law firms in its field.  Kessler Topaz is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including actions involving Lehman Brothers, Medtronic, Bank of America, Satyam, Longtop Financial, Transocean and UBS and has secured billions of dollars in recoveries for investors.  *See* Jarvis Decl., Ex. G.  Similarly, Grant & Eisenhofer is among the preeminent securities class action law firms in the country and is currently serving as lead or co-lead counsel in several complex securities fraud cases involving, inter alia, Satyam, Pfizer, UBS, Merck and Refco.  *Id.*, Ex. H.

Both firms also have experience jointly prosecuting complex class actions as both are currently serving as co-lead counsel in securities class action lawsuits against Medtronic, UBS and Satyam.  The firms also served as co-lead counsel in the securities class action lawsuit against Tyco International Ltd.  The case against Tyco was settled for $3.2 billion.

Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from these firms.  Both firms are highly qualified and will zealously represent the class's interests.

## IV.   CONCLUSION

For the foregoing reasons, Steinborn-Pilewski respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint Steinborn-Pilewski as lead plaintiff pursuant to the PSLRA; and (iii) approve Steinborn-Pilewski's selection of Kessler Topaz and Grant and Eisenhofer to serve as co-lead counsel for the class.

Dated:  October 18, 2011                    Respectfully submitted,

                              /s/ *Geoffrey C. Jarvis*
                              **GRANT & EISENHOFER P.A.**
                              Jay W. Eisenhofer
                              Geoffrey C. Jarvis
                              485 Lexington Avenue
                              New York, NY 10017
                              Telephone: (646) 722-8500
                              Facsimile: (646) 722-8501
                              *Proposed Co-Lead Counsel*

                              **KESSLER TOPAZ**
                              **MELTZER & CHECK, LLP**
                              Sean M. Handler
                              Naumon A. Amjed
                              Ryan T. Degnan
                              280 King of Prussia Road
                              Radnor, PA 19087
                              Telephone: (610) 667-7706
                              Facsimile: (610) 667-7056
                              *Proposed Co-Lead Counsel*