USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 04 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
BHUSHAN ATHALE, ET AL., :
                Plaintiff, :
:
-v- :
:
:
SINOTECH ENERGY LIMITED, ET AL., :
                Defendants. :
:
------------------------------------------------------------X

11 Civ. 05831 (AJN)
(consolidated)

<u>MEMORANDUM &
ORDER</u>

ALISON J. NATHAN, District Judge:

    A hearing was held on August 26, 2013, during which time the Court heard the Plaintiffs' Motion for Final Approval of Partial Settlement and Plan of Distribution of Settlement Proceeds and their Application for Award of Attorneys' Fees and Expenses. The Court had, on May 16, 2013, entered an Order of Preliminary Approval, in which it: (1) certified for settlement purposes only the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3); (2) approved notice to the Class; (3) established deadlines for objections; (4) set a date for a final fairness hearing; and (5) granted preliminary approval of the proposed Settlement. Dkt. No. 96. Having considered the written submissions of the parties and the written objection submitted by *pro se* Class Member Mark S. Litwin ("Mr. Litwin"), Dkt. No. 113, and having held a final fairness hearing and having considered the arguments offered at the final fairness hearing, it is hereby ORDERED that the Class is finally certified for settlement purposes and the Settlement is finally approved as follows:

**I.    Class Certification**

    The class is defined as:

> [A]ll persons who purchased the American Depository Shares ("Shares") of Sinotech Energy Limited ("Sinotech" or the "Company") between November 3, 2010 and August 16, 2011, inclusive ("Class Period"). Excluded from the Class are: (a) Persons or entities who submit valid and timely requests for exclusion from the Class; and (b) Defendants, members of the immediate family of any Defendant, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has or had a controlling interest during the Class Period, the officers and directors of any Defendant during the Class Period, and legal representatives, agents, executors, heirs, successors or assigns of any such excluded Person. The Defendants or any entity in which any of the Defendants has or had a controlling interest (for purposes of this paragraph, together a "Defendant-Controlled Entity") are excluded from the Class only to the extent that such Defendant-Controlled Entity itself purchased a proprietary (*i.e.* for its own account) interest in the Company's shares. To the extent that a Defendant-Controlled Entity purchased Sinotech shares in a fiduciary capacity or otherwise on behalf of any third-party client, account, fund, trust, or employee benefit plan that otherwise falls within the Class, neither such Defendant-Controlled Entity nor the third-party client, account, fund, trust, or employee benefit plan shall be excluded from the Class with respect to such Sintoech shares.

For the reasons set forth below, for purposes of this partial settlement, the Class is certified because it satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### A.   The Settlement Class Meets the Rule 23(a) Criteria

Rule 23(a) imposes four threshold requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

Numerosity is satisfied here because the Class encompasses upwards of 13,971 members -- too many for joinder to be practical. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

The commonality and typicality requirements are also met. Commonality demands that the class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotes and citations omitted). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982)); *see also Sykes v. Mel Harris and Assoc., LLC*, 285 F.R.D. 279, 286-87 (S.D.N.Y. 2012).

Here, the Class's claims all flow from the same course of events: the loss in value of American Depository Shares of SinoTech that were purchased between November 3, 2010 and August 16, 2011. All of the claims arise out of the same allegedly false and misleading statements made in connection with the Sinotech initial public offering and all would require essentially the same proof.

Finally, the Lead Plaintiff Zech Capital LLC ("Zech") is an adequate representative of the Class, as determined by the then-assigned judge, Judge Daniels, who appointed Zech as Lead Plaintiff after considering a number of other potential lead plaintiffs who had filed competing

3

motions seeking appointment. Dkt. No. 40; *see also In re Facebook Inc., IPO Sec. and Derivative Litig.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012). Lead Plaintiff is also represented by experienced counsel who have been involved in this action since its inception. *See In re Facebook Inc.*, 288 F.R.D. at 37.

### B. The Settlement Class Meets the Relevant Rule 23(b)(3) Criteria

In order to meet the requirements of Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The Court concludes that Rule 23(b)(3) is satisfied because the Class's claims depend on demonstrating and proving the various and complex alleged violations of Sections 11 and 15 of the Securities Act of 1933 ("1933 Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Securities Exchange Commission ("SEC") Rule 10b-5. Thus, for purposes of settlement, the Class meets the relevant 23(b)(3) criteria.

## II.   NOTICE WAS APPROPRIATE

As required by the Court's Preliminary Approval Order, dated May 16, 2013, the Class was provided with written notice of the terms of the Settlement, the procedures for submitting claims, and the procedures for objecting to or opting out of the Settlement Class. This information was mailed to almost 14,000 Class Members, posted on the claim's administrator's website, and published in both Investor's Business Daily and over the Business Wire. Both the

content of the written notice and the measures taken to provide the notice to Class Members were sufficient to satisfy the requirements of due process.

## III. SETTLEMENT APPROVAL

A district court's approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This entails a review of both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). In conducting this review, the Court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* at 117 (quoting 4 Newberg § 11:41, at 87). Nonetheless, when considering whether to approve a class action settlement, a district court must "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." *D'Amato*, 236 F.3d at 85 (citation omitted).

### A. Procedural Fairness

With respect to procedural fairness, a proposed settlement is presumed fair, reasonable, and adequate if it is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart*, 396 F.3d at 116). If, as here, a mediator is involved in the settlement negotiations between the parties, such involvement weighs heavily in favor of a finding of procedural fairness. *Wal-Mart Stores*, 396 F.3d at 118; *see also Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at * 9 (S.D.N.Y. Apr. 2, 2013)

("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process.").

The presumption that the settlement is fair, reasonable, and adequate, applies to this case where the Settlement was reached after two years of litigation and extensive investigation, involved the use of an experienced mediator (Judge Weinstein) in negotiating settlement, and all parties were represented throughout by experienced counsel.

B.    Substantive Fairness

In assessing substantive fairness, the Court considers the nine factors detailed by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463. "All nine factors need not be satisfied; rather, a court should look at the totality of these factors in light of the particular circumstances." *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008).

*1. The Complexity, Expense, and Likely Duration of the Litigation*

This action involves, among other things, complex factual questions involving the energy market and securities industry, which would likely require expert testimony, complex models, and analysis of financial data. The action also involves complex legal questions: the claims require proof of, *inter alia*, falsity, materiality, loss causation, scienter, and damages. Any claim as to the underwriter defendants would also have to overcome any "due diligence" defense that those defendants would likely raise. Furthermore, but for settling, the case would likely have long and hard-fought litigation, expensive foreign discovery, and the added difficulty of

6

attempting to enforce any final judgment in China. The Court therefore concludes that this factor weighs in favor of approving the proposed settlement.

### 2. *The Reaction of the Class to the Settlement*

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores*, 396 F.3d at 118 (quoting 4 Newberg § 11.41, at 108). However, the Court should keep in mind that "[l]ack of objection by the great majority of claimants means little when the point of objection is limited to a few whose interests are being sacrificed for the benefit of the majority." *Id.* (quoting *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 16 (2d Cir. 1981)).

Here, the Court received only one objection, Dkt. No. 112, and no exclusion requests. *See D'Amato*, 236 F.3d at 86-87 (18 objections and 72 exclusions out of 28,000 notices favors settlement); *In re Citigroup Inc. Secs. Litig.*, No. 09 MD 2070 (SHS), 2013 WL 3942951, at *10 (S.D.N.Y. Aug. 1, 2013) (11 objections and 134 exclusion requests in class of 2.5 million favors settlement). As noted, the objection was filed *pro se* by Mr. Litwan, who claims that the settlement is a "shameless pittance," that the attorneys' fees are excessive "given the obvious claims and the quick move to settlement," and that the overall "settlement is not fair, reasonable, or adequate given the strength of the claims, the amount of harm to the class, and the limited work performed by counsel." Dkt. No. 112.

Mr. Litwan's overall argument with regard to the settlement, while reasonable, does not present any actual basis for not finding the settlement fair, reasonable, or adequate. As Plaintiffs' counsel makes clear, although liability for Sinotech for the misrepresentations is "virtually absolute," proof is enormously complex as to the remaining defendants (the underwriters), and made even more so based on the fact that much of the relevant discovery (and

assets) are in China. Although Mr. Litwan argues that the claims are "obvious," as discussed above, proof of these claims and recovery of any judgment rendered is anything but straightforward absent settlement. To the extent that Mr. Litwan objects to the merits of the Settlement, such objection is overruled. To the extent that Mr. Litwan objects to the award of attorneys' fees, such objection will be addressed below.

In sum, the absence of persuasive objections to the settlement and the overall positive reaction of the class weighs heavily in favor of approval.

### 3. *The Stage of Proceedings and the Amount of Discovery Completed*

While the parties need not have engaged in extensive discovery, *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir.1982), the parties must have "engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer*, 668 F.2d at 660) (alterations in original). In addition, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [,but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y.1998)) (alterations in original).

Here, the parties have engaged in over two years of litigation, which did not include significant discovery, but which did involve extensive investigation of Sinotech and the transactions at issue by means of publicly available documents -- including press releases, public statements, Securities and Exchange Committee ("SEC") filings, regulatory filings and reports, and securities reports and advisories. In addition to their investigation of public documents, Plaintiffs conducted a number of witness interviews and reviewed non-public documents produced by the Settling Defendants. In response to Defendants' Motion to Dismiss, Plaintiffs

also filed a massive, complex Second Amended Complaint. Overall, this is sufficient to permit realistic appraisal of the reasonableness of the settlement and weighs in favor of approval.

    *4. The Risks of Establishing Liability and Damages*

"Securities litigation generally involves complex issues of fact and law[.]" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011). In actions brought pursuant to the 1933 Act, the Exchange Act, and Rule 10b-5, a plaintiff must establish that the defendants made misstatements or omissions of material fact in connection with their offering documents. *See In re Time Warner Sec. Litig.*, 9 F.3d 259, 264-66 (2d Cir. 1993); *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977). The risk inherent in such litigation is exacerbated in actions brought pursuant to the Exchange Act, which requires a plaintiff to establish that such misstatements or omissions of material fact were made with *scienter*. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) (explaining that there is "substantial risk involved in proving *scienter*, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult").

Proving damages in these actions can also be complicated and uncertain, particularly in cases such as this that require proof of loss causation. *In re Citigroup Inc.*, 2013 WL 3942951, at *11 (highlighting the difficulty faced in proving loss causation). Moreover, under the 1933 Act, damages are statutorily set, and if a defendant can prove that the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement, any such portion of damages are not recoverable. *See* 15 U.S.C. § 77k(e). Similarly, proving damages under § 10(b) of the Exchange Act would require a plaintiff to establish that the artificial inflation in stock price was caused by the alleged misrepresentations or omissions of

9

material fact. This would lead to competing expert testimony, which naturally introduces uncertainty into the damages estimation process. *See In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."); *Am Bank Note*, 127 F. Supp. 2d at 426-27; *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 56 (2d Cir. 2000) (citation omitted) (noting that expert reports are sometimes excluded as insufficiently reliable for admission at trial).

All of these risks are compounded by the fact that Defendants would vigorously contest the claims, generally; the aggregator defendants would argue a "due diligence" defense; and any judgment would potentially not be recoverable to the extent that the assets at issue are located in China. Overall, then, the liability and damages risks weigh in favor of approving the proposed settlement.

### 5. Risks of Maintaining the Class Action Through Trial

Absent settlement, there is no assurance that Lead Plaintiff's motion for class certification would be granted or that Class status, if granted, would be maintained throughout trial. *C.f. In re Citigroup Inc.*, 2013 WL 3942951, at *11 (noting that maintaining class through litigation can be difficult in securities cases involving serious questions as to loss causation). Moreover, the Settling Defendants are likely to challenge class certification and, if unsuccessful, are likely to attempt to remove Lead Plaintiff from its role as Class representative prior to trial.

Even still, all things considered, this factor is largely neutral. As discussed in Section I, there is nothing in the record to suggest that the Class would not, in fact, survive or that there would be any compelling argument for removing Lead Plaintiff from its role as Class representative, although there is always some possibility. *See Chamber v. Merrill Lynch*, No. 10 Civ. 7109 (ALJ), Memorandum and Order, Dkt. No. 149 (S.D.N.Y. Apr. 26, 2013) (noting "that

certification is never assured and that the Court can reevaluate the appropriateness of certification at any time").

### 6. *The Ability of Defendants to Withstand a Greater Judgment*

While Defendants could likely withstand a greater judgment, this does not, standing alone, suggest that the settlement is unfair. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000). However, given SinoTech's precarious financial condition and the risks associated with enforcing a judgment in China, the fact that Defendants could withstand a greater judgment is of little overall weight in this case.

### 7. *The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation*

"The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotes and citation omitted). "[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion – and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002) ("In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation."). "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012). Indeed, "there is no reason, at

least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Here, as in *In re Citigroup Inc.*, "the question for the Court is not whether the settlement represents the highest recovery possible -- which it does not -- but whether it represents a reasonable one in light of the many uncertainties the class faces -- which it does." 2013 WL 3942951, at *12 ($590 million settlement on case with "best possible recovery" of $6.3 billion considered fair and reasonable in light of uncertainties and risks). The $20 million recovery in this case represents approximately 13 percent of Lead Plaintiff's best damages model. Def. Br. 18. This is a significant recovery given the risks described, above, as well as in light of the fact that the action had not survived a motion to dismiss at the point at which it settled. This factor also weighs in favor of approving the proposed settlement.

C. Conclusion

For the forgoing reasons, the Court finds the Settlement to be fair, reasonable and adequate.

IV. **Attorneys' Fees and Expenses**

Lead Counsel seeks attorneys' fees in the amount of 25 percent of the Settlement Fund, or $5 million, and expenses in the amount of $55,454.63, plus interest on both amounts at the same rate that is earned by the Settlement Fund. *See* 15 U.S.C. § 77z-1(a)(6) (explaining that under the PSLRA, fees and expenses awarded to class counsel include "prejudgment interest actually paid to the class").

A. Standard of Review

"The award of attorneys' fees in common fund cases is a 'salient exception' to the 'rule in this country that litigants are expected to pay their own expenses.'" *Wells Fargo Bank, N.A. v.*

*ESM Fund I, LP*, No. 10 Civ. 7332 (AJN), 2013 WL 2395615, at *3 (S.D.N.Y. May 31, 2013) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)); (*citing Alyesaka Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975))). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). In these cases, however, because neither defense counsel nor the class members have a real incentive to oppose the plaintiff's requested fees, "the fee award should be assessed based on scrutiny of the unique circumstances of each case, and a 'jealous regard to the rights of those who are interested in the fund.'" *Goldberger*, 209 F.3d at 52-53 (quoting *Grinnell.*, 495 F.2d at 468) (citing *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) ("[D]istrict court was to act 'as a fiduciary who must serve as a guardian of the rights of absent class members."); *Matter of Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("Defendants, once the [common fund] amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee."); *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Goldberger*, 209 F.3d at 53 ("[Class members] have no real incentive to mount a [fees] challenge that would result in only a 'miniscule' *pro rata* gain from a fee reduction.").

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases." *Goldberger*, 209 F.3d at 50; *see also McDaniel*, 595 F.3d at 417 ("While the *Arbor Hill [Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2008)] panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method."). Inarguably, "the trend in this Circuit has been

13

toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases," particularly in complex securities class actions. *In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *Chamber*, No. 10 Civ. 7109 (ALJ), Dkt. No. 149 (S.D.N.Y. Apr. 26, 2013); *In re Citigroup Inc.*, 2013 WL 3942951, at *15 (noting that "using the percentage of the fund method to compensate plaintiffs' counsel in major securities fraud class actions is now firmly entrenched in the jurisprudence of this Circuit").

But this does not "render the lodestar irrelevant." *In re Citigroup Inc.*, 2013 WL 3942951, at *15. "No matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Wells Fargo Bank, N.A.*, 2013 WL 2395615, at *1 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 122-23 (("Irrespective of which method is used, the *Goldberger* factors ultimately determine the reasonableness of a common fund fee."). "Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable." *Wal-Mart Stores, Inc.*, 396 F.3d at 122; *see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 521 (E.D.N.Y. 2003) (collecting cases). Ultimately, the "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 27, 2004) (quoting *Goldberger*, 209 F.3d at 47).

B.  Discussion

Plaintiffs argue that the Court should apply the percentage of the fund method and request that the Court award 25 percent of the settlement fund, or $5,000,000 (as well as costs and interest). Plaintiffs' request for 25 percent of the common fund falls within the range of percentages regularly awarded in common fund cases. *See, e.g., Chamber*, No. 10 Civ. 7109 (ALJ), Dkt. No. 149. As noted above, the single objection in this case challenged the overall size of the attorneys' fees award, but not the application of the percentage of the fund method for calculating the recovery. Having considered the facts and circumstances of this case, as well as Plaintiffs' arguments, the Court will apply percentage of the recovery method, but subject to the lodestar crosscheck. *See Goldberger*, 209 F.3d at 50.

Upon applying the "lodestar crosscheck," Plaintiffs' request for 25 percent of the Settlement Fund amounts to a request for a 7.04 "lodestar multiplier," which is above what is normally awarded in complex securities litigation with funds of this size. *See In re Citigroup Inc. Secs. Litig.*, 2013 WL 3942951, at *16 (collecting cases). Specifically, Plaintiffs billed 1,516.50 hours in this action and, using their own self-reported billing rates, calculate a lodestar of $709,820.75. Assuming that these rates and the time billed are reasonable, which the Court may do when using the lodestar as a crosscheck, the lodestar multiplier of 7.04 would yield an award of roughly $3,297.07 per hour. *See In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *24 (S.D.N.Y. Feb. 01, 2007) (noting that the plaintiffs' request would "represent a fee of approximately $959 per hour, a princely rate of pay by any standard").

Although the Court agrees that the *Goldberger* factors -- and particularly the relatively speedy resolution of a case involving difficult questions of fact and law -- merit a substantial

15

percentage recovery, the Court concludes that the 25 percent recovery requested is excessive. Indeed, Plaintiffs' own brief acknowledges that even in cases with comparably swift results, courts tended to award percentage fees that yielded lodestar multipliers between four and five. *See* Pls. Br. 20 (citing *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240 (PAE), 2012 U.S. Dist. LEXIS 137409, at *14 (S.D.N.Y. Sept. 14, 2012) ("lodestar multiples of over 4 are routinely awarded"), and *Maley*, 186 F. Supp. 2d at 363-64 (multiplier of 4.65 "well within range awarded by courts")). And even the cases Plaintiffs attached as exhibits to their application for attorneys' fees demonstrate that although the percentage recovery Plaintiffs seek may be facially reasonable, it is excessive when viewed in light of the lodestar multiplier. *See In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377 (SAS), Order, Dkt. No. 415 (S.D.N.Y. June 11, 2012) (33 percent award; lodestar multiplier of 0.92); *Cornwell v. Credit Suisse Grp.*, No. 08 Civ. 3758 (VM), Order, Dkt. No. 117 (S.D.N.Y. Jul. 20, 2011) (27.5 percent award; lodestar multiplier of 4.7); *In re Jacks Pac. Inc. S'holder Class Action Litig.*, No. 04 Civ. 8807 (RJS), Order, Dkt. No. 121 (S.D.N.Y. Oct. 28, 2010) (30 percent award; lodestar multiplier of 1.35); *Schnall v. Annuity and Life*, No. 02 Civ. 2133 (EBB), Order, Dkt. No. 192 (S.D.N.Y. Jan. 21, 2005) (33 percent award; lodestar multiplier of 2.92); *In re Van Der Moolen Holding N.V. Secs. Litig.*, No. 03 Civ. 8284 (RWS), slip op. (S.D.N.Y. Nov. 6, 2006) (33 percent award; lodestar multiplier 1.78).

The Court was persuaded by Plaintiffs' argument at the hearing on August 26, 2013, that they should be rewarded for having reached a substantial and beneficial result prior to the Court ruling on a motion to dismiss. The Court also does not believe that Plaintiffs should be unduly "punished" for having reached a settlement that exceeded the expectation of the neutral, experienced judge who conducted the settlement negotiations in this case, and that litigants

generally should not be encouraged to overbill in an effort to garner a lower lodestar multiplier. In addition, certain of the *Goldberger* factors weigh in favor of a substantial award in this case: (1) the case is fairly large and relatively complex; (2) there are a number of risks of litigation and recovery, as detailed above, and counsel was working on a contingent fee basis, *see Top Tankers*, 2008 WL 2944620, at * 15; (3) the quality of representation was high; and (4) the settlement was speedy and substantial.

In light of these and the facts discussed above, the Court concludes that although a 25 percent award is unreasonably high in this case, the *Goldberger* factors (as well as the facts discussed above) weigh in favor of an award of 20 percent of the Settlement Fund, or $4 million. This amounts to a lodestar multiplier of 5.65, which although high, is not unreasonable under the particular facts of this case. This award is sufficient to compensate counsel for the work they have put in and the risks they took, as well as to reward them for zealously litigating the dispute and timely resolving the action.

C.  Expenses

In addition to attorneys' fees, counsel is entitled to reimbursement from the common fund for reasonable litigation expenses. *Miltland Raleigh-Durham v. Myers,* 840 F. Supp. 235, 239 (S.D.N.Y. 1993) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987)). Here, notice to the class indicated an amount not to exceed $100,000; the amount actually requested is $55,454.63. There have been no objections to the expense request, *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003), and it appears to be reasonable.

## V. Conclusion

For the reasons discussed above, the partial Settlement is determined to be fair, reasonable and adequate. Accordingly, Plaintiffs' Motion for Final Approval of the Class Action Settlement is GRANTED; by separate Order, the Court will also approve of Plaintiffs' proposed order approving the plan of distribution of the settlement proceeds. Plaintiffs' Application for Award of Attorneys' Fees and Expenses is GRANTED in part: the Court awards $4,000,000 in attorneys' fees and $55,454.63 in costs.

This Order resolves Docket Number 101.

SO ORDERED.

Dated: September 4, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Judge